FILED

97 MAR 20 PM 3:56

U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

RAYMOND GONZALEZ, )
　　　　　　　　　　　　　　)
　　　　　Plaintiff, )
　　　　　　　　　　　　　　)
vs. ) Case No. CV 96-AR-1258-E
　　　　　　　　　　　　　　)
LIEUTENANT WILLIAM WEIR, )
　　　　　　　　　　　　　　)
　　　　　Defendant. )

ENTERED

MAR 20 1997

MEMORANDUM OF OPINION

　　　　This is an action brought pursuant to 28 U.S.C. § 1331 and the Eighth Amendment to the Constitution, wherein the plaintiff, Raymond Gonzalez, alleges that he has been deprived of his constitutional rights by the actions of defendant Lieutenant William Weir. The plaintiff is a federal prisoner incarcerated at the Federal Correctional Institute (F.C.I.) in Sheridan, Oregon; he was incarcerated at the F.C.I. in Talladega, Alabama until July 1996. He is seeking money damages and injunctive relief. Although the complaint was referred initially to a magistrate judge for a preliminary review and recommendation, that reference is now withdrawn.

Procedural History

　　　　On May 14, 1996, the plaintiff filed a pro se complaint pursuant to 28 U.S.C. § 1331 and Bivens v. Six Unknown Named

<u>Agents</u>, 403 U.S. 388, 91 S. Ct. 1999, 29 L.Ed. 2d 619 (1971). Pursuant to the court's order to show cause, the defendant filed his special report on August 14, 1996, supported by exhibits. By order of August 16, 1996, the parties were notified that the special report filed by the defendant would be construed as a motion for summary judgment, and the plaintiff was notified of the provisions and consequences of Rule 56 of the Federal Rules Of Civil Procedure. Also on August 16, 1996, the plaintiff filed a motion for leave to amend the complaint to add Lieutenant Vincent as a defendant. By order of August 23, 1996, the magistrate judge denied the plaintiff's motion for leave to amend on the basis that the plaintiff failed to state a claim against Lieutenant Vincent.

On November 18, 1996, the defendant filed a supplemental special report, attaching the declaration of defendant Weir, and on November 20, 1996, he filed additional exhibits, including copies of medical records. By order of November 22, 1996, the parties were again notified that the special report and supplemental special report filed by the defendant would be construed as motions for summary judgment, and the plaintiff was again notified of the provisions and consequences of Rule 56 of the Fed.R.Civ.P. The plaintiff filed a response on December 9, 1996.

## Summary Judgment Standard

Because the court is treating the special report and the supplemental special report from the defendant as motions for summary judgment, the court must determine whether there are any genuine issues of material fact and whether the moving defendant is entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. See F.R.Civ.P. 56. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. See Clark v. Coats & Clark, Inc., 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. See Celotex Corp. v. Catrett, supra; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Barfield v. Brierton, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate

burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, supra; Bennett v. Parker, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

Bennett v. Parker, 898 F.2d at 1532. Any "specific facts" alleged in a sworn *pro se* complaint must also be considered in opposition to a motion for summary judgment. Perry v. Thompson, 786 F.2d 1093 (11th Cir. 1986).

### Facts

On March 6, 1996, the plaintiff was moved from Alpha-A unit to Alpha-B unit and was placed in a cell with inmate Adrian

4

Nance. On March 8, 1996, the plaintiff submitted an inmate request form complaining of the following:

> Lt. Weir, please I'm requesting to be move out of cell (D-9) and be place in a cell by myself. I'm having problems with Inmate Adrian Nance (cellmate) because he found out by others inmate that I was a Government informant and that I cooperated with the Government and that he don't dislike rat. Lt. I have lots incriminating legal document with me concerning this matter. I'm also having problem racial inmate Nance is a pro-black and dislike white folks. Please considered and place me in a cell by myself for protection. Thank You.

Lieutenant Weir consulted the Special Housing Unit Lieutenant, who advised him that he knew of no special conditions concerning the plaintiff and that the plaintiff celled with another inmate prior to Nance with no complications. Lieutenant Weir also contacted the Special Investigations Lieutenant who said that he knew of no reason why the plaintiff could not be housed with another inmate. Lieutenant Weir then checked with the Central Inmate Monitoring System and verified that the plaintiff did not have any known separation needs or any special security concerns. On March 11, 1996, plaintiff again requested that he be moved to a single cell because of troubles with his cellmate. His cellmate was aware that plaintiff was cooperating with government investigations and, consequently, referred to him as a "rat" and

5

"snitch." Lieutenant Weir informed the plaintiff that he was unable to verify his claim that he required a single cell and therefore he was not going to move him, but that he could place his incriminating legal documents in the property room. Lieutenant Weir never received any further communication from the plaintiff about problems with his cellmate. On March 16, 1996, the plaintiff was assaulted by inmate Nance. The plaintiff was taken to the infirmary and complained to medical personnel that he was punched twice, slapped on the left side of his face, and was hit on his left lower leg with a food tray. The plaintiff was examined by medical personnel, and the examination revealed only a mild tenderness of the area around the left cheek. The plaintiff was moved to a single cell where he remained until his transfer to Oregon.

### Exhaustion Of Administrative Remedies

Federal prisoners who seek relief under 28 U.S.C. § 1331 are generally required to exhaust administrative remedies before seeking injunctive relief. Pyles v. Carlson, 698 F.2d 1131 (11th Cir. 1983); Kyle v. Hanberry, 677 F.2d 1386 (11th Cir. 1982); Miller v. Stanmore, 636 F.2d 986 (5th Cir. 1981); see also Hessbrook v. Lennon, 777 F.2d 999 (5th Cir. 1985). In Anderson v. Miller, 772 F.2d 375 (7th Cir. 1985), cert. denied, 475 U.S. 1021,

106 S. Ct. 1210, 89 L. Ed. 2d 322 (1986), the court described the three-tiered administrative remedy available to federal inmates:

> The Bureau of Prisons has established a three-tier system of administrative remedy procedures whereby an inmate in a federal prison may seek review of a complaint which relates to any aspect of imprisonment. 28 C.F.R. § 542.10 (1984). Procedures for appeal are set out in 28 C.F.R. §§ 542.11-542.16 and in BOP Program Statement ("PS") 1330.7 (October 2, 1979). Inmates must first file a formal written complaint with the relevant Warden on the appropriate form ("BP-9"). 28 C.F.R. § 542.13; PS 1330, ¶ 7b. Subsequent appeals are available with the BOP Regional Director and General Counsel. 28 C.F.R. § 542.15. Inmates must utilize the appropriate "BP-10" or "BP-11" forms to make these further appeals. PS 1330.7, ¶ 7b. (Footnotes omitted.)

772 F.2d at 377.

Although the plaintiff requested both monetary and injunctive relief, his request for injunctive relief has become moot since he is no longer incarcerated at the Talladega F.C.I.; thus, the plaintiff's only relief now is money damages. McKinnon v. Talladega County, 745 F.2d 1360 (11th Cir. 1984). If a federal prisoner seeks only money damages, exhaustion of remedies is not required. McCarthy v. Madigan, 503 U.S. 140, 112 S. Ct. 1081, 117 L. Ed. 2d 291 (1992). Therefore, the court will not require the plaintiff to exhaust administrative remedies.

7

### Protection From Other Inmates

Generally, a prison inmate has no constitutional right to a housing unit or to a prison of his choice. See Meachum v. Fano, 427 U.S. 215, 96 S. Ct. 2532, 49 L. Ed. 2d 451 (1976). However, it is well settled that a prisoner has a constitutional right to be protected from the constant threat of violence and from physical assault by other inmates. Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986). "[W]hen prison officials are or should be aware of a danger posed to an inmate, they are obligated to take all reasonable steps to protect him, and the failure to do so may be an actionable constitutional wrong." Hopkins v. Britton, 742 F.2d 1308, 1310 (11th Cir. 1984) (citing Gullatte v. Potts, 654 F.2d 1007 (5th Cir. Unit B, 1981)).

However, not every isolated incident of violence by one inmate toward another rises to the level of a constitutional violation. Prison officials may be liable for deliberate indifference to a prisoner's constitutional rights "either because they actually intended to deprive him of some right, or because they acted with reckless disregard of his right to be free from violent attacks by fellow inmates." Zatler, 802 F.2d at 400-01 (quoting Martin v. White, 742 F.2d 469, 474 (8th Cir. 1984)). However, the mere negligent failure to protect an inmate from attack does not

give rise to a cause of action. <u>Davidson v. Cannon</u>, 474 U.S. 344, 347-48, 106 S. Ct. 668, 670, 88 L. Ed. 2d 677 (1986).

"Prison officials must have been deliberately indifferent to a known danger before we can say that their failure to intervene offended 'evolving standards of decency,' thereby rising to the level of a constitutional tort." <u>Brown v. Hughes</u>, 894 F.2d 1533, 1537 (11th Cir. 1990) (citing <u>Estelle v. Gamble</u>, 429 U.S. 97, 105-06, 97 S. Ct. 285, 291-92, 50 L. Ed. 2d 251 (1976)); <u>see generally</u>, <u>Farmer v. Brennan</u>, ___ U.S. ___, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); <u>LaMarca v. Turner</u>, 995 F.2d 1526 (11th Cir. 1993), <u>cert. denied</u>, ___ U.S. ___, 114 S. Ct. 1189, 127 L. Ed. 2d 539 (1994). "The known risk of injury must be a 'strong likelihood, rather than a mere possibility' before a [defendant's] failure to act can constitute deliberate indifference." <u>Brown</u>, 894 F.2d at 1537 (citing <u>Edwards v. Gilbert</u>, 867 F.2d 1271, 1276 (11th Cir. 1989)); <u>accord</u>, <u>Hale v. Tallapoosa County</u>, 50 F.3d 1579 (11th Cir. 1995).

In <u>Young v. Quinlin</u>, 960 F.2d 351, 363 n.23 (3d Cir. 1992), the court stated:

> To be sure, prison officials are presented with an arduous task when asked to discern legitimate from illegitimate requests for protective custody:
>
>> [i]n an ideal world, prisoners would request protective custody based on a sincere fear of physical harm upon which prison officials could rely.

9

> However, in a more realistic world, prisoners may feign their fear of physical harm simply to manipulate a transfer. The reasons vary for prisoners to use such fear as a ruse to obtain a transfer to dorm with a friend and/or to obtain better living quarters are examples. Therefore, when a prisoner requests a transfer because he fears for his life, prison officials are required to determine the credibility of his fear.
>
> Mullen v. Unit Manager Weber, 730 F. Supp. 640, 645 (M.D. Pa. 1990). Prison officials, therefore, are not required to provide protective custody to every inmate who asserts he was assaulted or threatened. Nonetheless, prison officials should, at a minimum, investigate each allegation of violence or threat of violence. [Cf. Riley v. Jeffes, 777 F.2d 143, 146-48 (3d Cir. 1985).]

Lt. Weir contends that he reasonably investigated the plaintiff's contention that he was at risk due to being celled with Nance and concluded that the plaintiff was not at risk. Lieutenant Weir did consult with the Special Housing Unit Lieutenant, the Special Investigations Lieutenant, and the Central Inmate Monitoring System, and the results of those inquiries did not reveal any evidence to support the plaintiff's allegation that he may be in danger. All of these efforts, however, took place before March 8, 1996, when plaintiff sent a written request to Lt. Weir for a cell move due to threats by his cellmate. There is no evidence to

10

suggest that Lt. Weir made any further effort to assess the danger to plaintiff after receiving that warning. Nor is there evidence that he investigated the additional warnings plaintiff communicated on March 10 and 11, 1996. Even though Lt. Weir's initial investigation into plaintiff's concern shows the absence of deliberate indifference at that time, his failure to investigate further -- even simply to question plaintiff's cellmate -- after receiving three requests and complaints from plaintiff creates a triable issue with respect to whether he was deliberately indifferent at that time. Accordingly, Lieutenant Weir is not entitled to summary judgment on this claim.

## Conclusion

Based on the foregoing considerations, the court concludes that the motion for summary judgment filed in behalf of the defendant is due to be denied. By separate order the motion for summary judgment will be denied, and the defendant will be required to answer the complaint within twenty days.

DATED this 20th day of March, 1997.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE